IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW WOJTASZEK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DR. LITHERLAND, MS. CORRELL, and )<br>WEXFORD HEALTH SOURCES, INC., )<br>)<br>Defendants. )<br>)<br>) | Case No.08-cv-317 JPG |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing suit as required under 42 U.S.C. § 1997e.  It is **RECOMMENDED** that the Court **FIND** that Plaintiff Matthew Wojtaszek did exhaust his administrative remedies as to Defendants Litherland, Correll, and Wexford Health Sources, Inc., and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

*Procedural History*

Plaintiff filed his complaint in this action on April 29, 2008, alleging that Illinois Department of Corrections ("IDOC") officials were deliberately indifferent to his serious dental needs when they required that he consent to the extraction of several non-symptomatic teeth before they would treat painful cavities in other teeth (Docs. 1 and 34).

In answering the amended complaint Defendants Litherland, Correll and Wexford Health

Sources, Inc. ("Wexford") raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in violation of 42 U.S.C. §1997e(a) (Doc. 36).[1]

Based on the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned set a hearing in the matter for November 6, 2009 (Doc. 41 and 56). Defendants Litherland, Correll, and Wexford filed a brief in support of Plaintiff's failure to exhaust administrative remedies in which they argued that Plaintiff submitted only one grievance regarding dental care to the Administrative Review Board, thus he exhausted his administrative remedies only as to the complaints raised in that grievance (Doc. 53).

*Exhausted Grievance*

Plaintiff filed a grievance on July 17, 2007, complaining that since his arrival at Lawrence Correctional Center on February 21, 2007, he had experienced pain in two teeth containing cavities. Shortly after arrival, he was taken to the dental department and was told that dental x-rays taken of Plaintiff's teeth at Stateville Correctional Center showed a tooth in need of extraction. Plaintiff responded that the tooth identified as needing extraction was not causing him pain at that time, but two other teeth containing cavities and exposed nerves were causing him pain and difficulty eating. Plaintiff was told that the waiting list for cavity work was nine months. He asked to be added to that list and was told he would have to sign a refusal for the extraction, which he did. Thereafter, the pain in the two teeth with cavities worsened. A piece of one of those teeth fell out while he was eating. He sent a request for dental work. On April 23, 2007, a dental assistant came to his cell in response to the request. He informed her he was in pain. She responded that he would not receive

---

[1] Defendant Pamela Moran filed a Motion to Dismiss in lieu of an answer (Doc. 38). The Court granted that motion and dismissed Defendant Moran from the action on March 26, 2010 (Doc. 66).

any cavity work at Lawrence within the two-and-one-half years left on his sentence. She offered him only extractions of other teeth not causing pain. She offered no pain medication. Plaintiff's pain continued to worsen and he began to have more and more difficulty eating. On June 26, 2007, he sent another request slip to the dental department asking to see Dr. Litherland. Plaintiff was called to see Dr. Litherland on June 28, 2007. According to Plaintiff, Dr. Litherland told him "he would not do anything about my cavities, which was causing me the pain, but that all he would do before anything else was to do several extractions in which would leave me still in pain and with few teeth left to eat with even without pain." Plaintiff asked the dental assistant, Defendant Correll, how long it would take to get cavity work on the teeth causing pain if he agreed to the other extractions. She told him that by the time he would be called it would be too late and the two teeth would have to be extracted. He told Dr. Litherland and Ms. Correll that he did not want his teeth extracted but wanted them to try to save the two teeth so he would have some teeth left with which to eat. She told him to sign another extraction refusal, which he did. He asked, but they refused to give him their names. On July 5, 2007, Plaintiff saw Maggie Bryan, the medical director at Lawrence, about his lack of dental treatment. She advised him to file the grievance at issue (Doc. 53-1, pp. 6-8).

Correctional Counselor Forrest Harvey responded to the grievance on July 23, 2007. He stated Plaintiff was in need of several dental extractions, and dental restoration would be utilized after all severely decayed non-restorable teeth were removed. Counselor Harvey stated "standard protocol dictates that procedure." He also noted that Plaintiff had refused dental extractions on two occasions (Doc. 53-1, p. 6).

Grievance Officer Pamela Moran filed a grievance officer's report on the grievance on September 10, 2007 (Doc. 53-1, p. 9). Moran summarized the contents of the grievance and reported:

> Dr. Litherland, DMD, responds that Mr. Wojtaszek is in need of several dental extractions as indicated from his dental x-rays and previous oral exams. Dental restorations will be utilized after all severely decayed symptomatic, non-restorable teeth are removed. Standard dental protocol dictates removal of non-restorable teeth before operative procedures performed.  Dr. Litherland states this patient was informed of this mode of treatment, however refused dental extractions on two occasions.  He may submit a request to begin recommended procedures.

Moran denied the grievance, stating,

> It appears Dr. Litherland has outlined a treatment plan that inmate Wojtaszek will not agree to.  Dr. Litherland states the plan is based on standard dental protocol.  Inmate Wojtaszek is encouraged to allow treatment in order to benefit his health; he certainly may request medication for pain while treatment proceeds.

(Doc. 53-1, p. 9.)  The CAO concurred in denying the grievance on September 12, 2007.  Plaintiff filed an appeal of the denial of the grievance with the Administrative Review Board ("ARB") on October 11, 2007.  On October 26, 2007, the ARB denied the appeal (Doc. 53-1, p. 5).

*Pavey Hearing*

At the hearing held November 16, 2009, Defendants conceded that the issues raised in the July 17, 2007, grievance filed by Plaintiff were sufficient to exhaust as to Dr. Litherland and Ms. Correll.  Defendants argued, however, that they had met their burden of establishing that Plaintiff did not exhaust his administrative remedies as to Defendant Wexford.  Defendants argued that Plaintiff was required but failed to identify Wexford by name in the July 17, 2007, grievance. Defendants argued that in Illinois a corporation is a person, and thus Wexford constitutes a person within the meaning of the Illinois grievance procedures. It was thus incumbent upon Plaintiff to name Wexford in a grievance under the Illinois regulations.  Defendants further argued that as early as January 2008, Plaintiff knew that Wexford was Dr. Litherland's employer.  He did not file the complaint until three months later.  Defendants thus argued Plaintiff could and should have filed a grievance naming Wexford or indicating that Wexford violated his constitutional rights (Tr. 9-12).

In response, Plaintiff, through counsel, argued that the Seventh Circuit and Illinois federal district courts have held that Wexford is not dismissible under the PLRA for an inmate's failure to name it in a grievance. Moreover, the same courts have held that an inmate does not have to file multiple grievances about an ongoing constitutional violation. The inmate merely has to alert prison officials of the unconstitutional conduct. Plaintiff also pointed out the Seventh Circuit's holding in *Bond v. Cullinan*, 90 Fed. Appx. 164, 166 (7th Cir. 2004), in which the Court questioned whether an inmate was even capable of exhausting administrative remedies as to Wexford under the current provisions of the Illinois Administrative Code (Tr. 12-16).

Defendants countered that there is no futility exception to the PLRA. Plaintiff has to ask for relief in a grievance, even if the IDOC cannot provide an adequate remedy. Even if the Court were to find merit to Plaintiff's argument that he could not exhaust as to Wexford under the Code, Defendant argued that the contract between IDOC and Wexford provides remedies. Defendant introduced that contract at the hearing (Tr. 18-25).[2]

Defendants also argued that due to the IDOC regulation that a grievance must be filed within 60 days of the occurrence of the incident upon which the grievance is based, Plaintiff's grievance was insufficient to cover any incidents prior to May 17, 2007 (Tr. 32). Plaintiff countered by pointing out that in the Seventh Circuit the IDOC's consideration of an arguably untimely grievance on its merits constitutes waiver of the argument that it was untimely (Tr. 39). Plaintiff further maintained that Plaintiff is not required to file multiple grievances where a constitutional violation is ongoing. The Seventh Circuit does not consider each incident in an ongoing denial of a

---

[2]Plaintiff claimed that even though they had asked for the contract in discovery, they had never received it and could not adequately respond to the Defendants' contract-based arguments at the hearing. The Court granted Plaintiff leave to "submit a brief regarding the contractual relationship between Wexford and the IDOC by 11/30/2009." *See* discussion *infra*.

constitutional right a discrete claim, but a continuing violation "that accrues when the Defendant has notice of the untreated condition and ends only when the treatment is provided or the inmate is released" (Tr. 41-42).

Defendants argued lastly that Plaintiff specified in his amended complaint that forced extraction of the teeth before treating the cavities in the other teeth was battery, yet Plaintiff's grievance did not invoke the theory of battery and was therefore insufficient to exhaust this claim. Plaintiff responded that the battery argument is that but for the defendants failure to treat the cavities, the teeth would not have to have been extracted, and that is clearly stated in the grievance (Tr. 60-62).

*Post-Hearing Filings*

As directed by the Court at the hearing, on November 30, 2009, Plaintiff filed a Supplemental Submission Regarding Exhaustion of Administrative Remedies (Doc. 61). In sections I and II of the supplemental brief Plaintiff argued that the contract between Wexford and IDOC provides no remedies for prisoners to complain about their mistreatment by Wexford employees. Because no such remedies are available, under Seventh Circuit law, an inmate is deemed to have exhausted and may proceed to the merits of his claim. Furthermore, Plaintiff argued, even if such remedies existed, Plaintiff never had a copy of the contract and thus could not have availed himself of any remedies therein.

In sections III and IV of the brief, Plaintiff addressed two additional arguments regarding exhaustion. First, the Illinois Administrative Code does not impose a duty on inmates to supplement previously-filed grievances. Second, Plaintiff exhausted his administrative remedies regarding his state law claims.

In response, Defendants moved to strike section III and IV from the Plaintiff's supplemental

brief because those two arguments were not related to the contract between Wexford and the IDOC (Doc. 62). The Court has granted Defendants' motion (Doc. 67). Thus, the Court will consider only the arguments raised in sections I and II of Plaintiff's supplemental brief in its analysis.

### CONCLUSIONS OF LAW

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE tit. 20, § 504.810 (2003). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. ILL. ADMIN. CODE tit. 20, § 504.830 (2003). An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE tit. 20, § 504.850 (2003). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

*Exhaustion as to Wexford*

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." ILL. ADMIN. CODE tit. 20, § 504.810(b) (2003). The Supreme Court has held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The Court emphasized that the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations, but that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

The Seventh Circuit recently applied the Supreme Court's holding in *Jones v. Bock* to the Illinois Administrative Code provisions governing the filing of inmate grievances. *See Glick v. Walker*, No. 09-2472, 2010 WL 2775864 (7th Cir. July 13, 2010).[3] The Court reasoned that the first sentence of the regulation, which requires an inmate to supply "the name of each person who is the

---

[3]Fed. R. App. P. 32.1 allows citation to federal judicial opinions, orders, judgments, or other written depositions "designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like" and issued on or after January 1, 2007.

subject of or who is otherwise involved in the complaint," is "softened" by the next sentence, "which clarifies that prisoners need identify names only to the extent practicable." *Glick*, at *3. The Court described the hardships faced by an inmate seeking to identify individuals in a grievance:

> At the source of the decisions in question was a mystifying web of rules and procedures, and behind those an army of administrators; it would be unreasonable to expect that for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision.

*Id.* The Court in *Glick* reiterated the holding in *Jones v. Bock* that grievances are intended to give prison officials a chance to address a complaint, not to notify individuals of a potential lawsuit. *Id*.

Other federal courts in Illinois have rejected Defendant Wexford's argument that an inmate must identify Wexford Health Sources by name in a grievance prior to bringing suit against it. An inmate is not required to "name every individual involved in each stage of the alleged, ongoing denial of needed medical care." *Thomas v. Ghosh*, No. 08 C 4644, 2009 WL 910183, at *4 (N.D. Ill. March 31, 2009). *See also Laktas v. Health Professionals Limited*, No. 03-1374, 2007 WL 4379417 (C.D. Ill. December 12, 2007) (rejecting the argument that an inmate must identify Wexford in a grievance before naming Wexford as a defendant in a federal civil rights action and emphasizing that "[t]he primary purpose of the grievance system is to alert prison officials to a problem, not to provide personal notice to a particular individual that he might be sued").

### *Ongoing or Continuing Violation*

The Seventh Circuit has held that "deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, 258 Fed.Appx. 3, 5-6 (7th Cir. 2007) (citing *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001)). When an ongoing violation is alleged, the Seventh Circuit allows a plaintiff to "reach back" to the point where a

defendant "learned that [the inmate] had a condition warranting medical attention yet unreasonably refused to provide that attention." *Heard*, 253 F.3d at 318. An inmate is not required to file a grievance for each instance in which he was denied medical treatment, so long as the greivance he did file "served its function of alerting the state and inviting corrective action." *Ghosh*, 2009 WL 910183 at *4 (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

Based on these cases, the Court finds that Plaintiff did exhaust his administrative remedies as to Wexford. Plaintiff's detailed grievance was more than sufficient to alert prison officials to the difficulties he was having obtaining dental treatment. Under *Jones v. Bock*, that is all that is required. Plaintiff did name Defendants Litherland and Correll. There is no indication that at the time he wrote the grievance he was even aware of the existence of Wexford as the employer of Litherland and Correll. Furthermore, even if Plaintiff was not aware of the employer-employee relationship, Defendants Litherland, Correll, and Wexford cannot argue that *they* were not aware of the relationship. Thus, Wexford *should* have been put on notice that it might be sued, even though such notice is not a recognized purpose of a grievance.

The Court also finds that Plaintiff's grievance was sufficient to encompass all events regarding the denial of dental treatment, including those that occurred prior to 60 days before the filing of the grievance. Plaintiff's complaints were about an ongoing problem. Under Seventh Circuit law, this is sufficient. Regardless of the timing of the grievance, the claim accrued when Defendants became aware that Plaintiff wanted to save the two cavity-ridden teeth.

Defendants' final argument that the state law battery claim was not raised sufficiently in the grievance also fails. Again, the purpose of a grievance is to alert prison officials to a problem, not to prepare a potential defendant for litigation. The grievance clearly stated that Plaintiff did not want the teeth extracted before the cavity work was done.

*Contractually Based Remedies*

At the hearing, Plaintiff asserted that the Seventh Circuit has questioned whether an inmate is capable of exhausting as to Wexford under the current provisions of the Illinois Administrative Code. In response, Wexford argued that an inmate cannot forgo attempts to exhaust by claiming that such attempt would be futile. *See Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Defendants pointed to the contract for services between the IDOC and Wexford, arguing that provisions of the contract provide remedies for the Plaintiff such that filing a grievance naming Wexford would not only be not futile, but required of Plaintiff. Defendants pointed to sections in the contract which allow the IDOC to approve selection of employees, allow IDOC to notify Wexford when an employee is not adequately performing his or her job duties, allow IDOC to monitor employee performance, and allow IDOC to terminate the contract with sufficient notice. Defendants argue that these provisions provide a remedy for an inmate seeking redress against a Wexford employee, creating a requirement that inmates file grievances naming Wexford.

The Court finds no merit to Defendants' argument that provisions of the contract contain remedies for the Plaintiff necessitating that he file a grievance seeking such. The Court has found no provisions that convey any rights or privileges to inmates under the contract. Moreover, Plaintiff is not a party to the contract between IDOC and Wexford. He had no knowledge of the contract at the time he filed his grievance. He relied only on the regulations in the Illinois Administrative Code and followed them properly in exhausting his July 2007 grievance. Defendants' argument that the contract requires an inmate to file a grievance naming Wexford fails in the face of clear Supreme Court and Seventh Circuit precedent relieving an inmate of the responsibility of identifying by name each person or entity he might later name in a lawsuit. Defendants' reliance on the contract as a source of administrative remedies Plaintiff is required to pursue is misplaced.

In summary, under relevant precedent, Plaintiff was not required to identify Wexford by name in his grievance. Thus, Plaintiff's failure to name Wexford in his grievance does not preclude review of his case against Wexford on the merits.

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies as to Defendants Litherland, Correll, and Wexford Health Sources, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 1, 2010**

> s/ *Donald G. Wilkerson*
> **DONALD G. WILKERSON**
> **United States Magistrate Judge**