IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW WOJTASZEK, #K63527, | |
| Plaintiff, | |
| v. | |
| DR. LITHERLAND, MS. CORRELL, PAMELA MORAN AND WEXFORD HEALTH SOUCES, INC., | Case No: 08-cv-00317-JPG-DGW |
| Defendants. | |

MEMORANDUM AND ORDER

This matter comes before the Court on Magistrate Judge Donald G. Wilkerson's Report and Recommendation ("R & R") (Doc. 68) wherein it was recommended the Court find Plaintiff Matthew Wojtaszek exhausted his administrative remedies as to Defendants Litherland, Correll, and Wexford Health Sources, Inc.  After reviewing a magistrate judge's report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.*

The Court must review *de novo* the portions of the report to which specific written objections are made. *Id*. "If no objection or only partial objection is made, the district court Judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The Defendants have filed an objection (Doc. 69) which the Plaintiff responded to (Doc. 70) and as such the Court reviews the objected to portions of the R&R *de novo*.

1

## **BACKGROUND**

I.      Facts

No party has objected to the substantive facts of this case. The Plaintiff, Matthew Wojtaszek arrived at Lawrence Correctional Center on February 21, 2007. Shortly thereafter, he experienced pain in two of his teeth with cavities and was told a different tooth which was not causing him pain needed to be extracted. Plaintiff did not want the tooth not causing pain to be extracted but wanted the other two teeth, which had exposed nerves and caused him pain to eat, to be fixed. Plaintiff was told there was a nine month waiting list for cavity work and he asked to be added to the list. He signed an extraction refusal at this point. Sometime after this, a piece of one of the teeth fell out while eating and he sent a request for dental work. On April 23, 2007, the Plaintiff was seen by a dental assistant who offered no pain medication and offered to extract the teeth not causing him pain. Plaintiff's pain and difficulty eating continued and he requested to see Dr. Litherland on June 26, 2007. Dr. Litherland also wanted to extract teeth that were not causing pain, leaving the plaintiff "with few teeth left to eat with even without pain." Plaintiff was told by Defendant Correll, a dental assistant, that by the time he was called for cavity repair, the teeth would need to be extracted. He signed another extraction refusal and asked for the names of the Doctor and dental assistant which they refused to give him.  On July 5, 2007, he saw Maggie Bryan, the medical director at Lawrence about the lack of dental treatment and she advised him to file a grievance which he did on July 17, 2007.

II.     Procedural History

On July 23, 2007, a correctional counselor responded to the grievance and stated Plaintiff needed dental extractions and restoration would be utilized after all severely non-restorable teeth were removed. Grievance Officer Pamela Moran filed a grievance officer's report on September 10, 2007, wherein she denied the grievance finding Wojtaszek would not agree to Dr.

2

Litherland's treatment plan. The Administrative Review Board also denied the appeal on October 26, 2007. On April 29, 2008, the Plaintiff filed this present action under 42 U.S.C. §1983 alleging deliberate indifference to serious medical needs by the defendants.

On November 16, 2009, Magistrate Judge Wilkerson held a hearing in accordance with *Pavey* to determine whether the Plaintiff exhausted his administrative remedies. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Following this hearing, Magistrate Judge Wilkerson determined the Plaintiff did in fact exhaust his administrative remedies (Doc. 68) and it is this finding which the Defendants appeal.

## ANALYSIS

I.      Defendants' Objection to Factual Inaccuracy

The Defendants first object on the ground of factual inaccuracy. Defendants specifically alleged Magistrate Judge Wilkerson misstated what the Defendants conceded at the *Pavey* hearing on November 6, 2009. The R&R states:

> [a]t the hearing held November 16, 2009, Defendants conceded that the issues raised in the July 17, 2007 grievance filed by Plaintiff were sufficient to exhaust as to Dr. Litherland and Ms. Correl." (Doc. 68 at 4).

The transcript from the *Pavey* hearing states:

> We would concede that as to the issues that are raised in the July 17th, 2007 – I think I have got that date right – grievance, there are issues in that, he has exhausted as to them. And he does specifically name Dr. Litherland and Ms. Correll in that grievance. Nov. 6 2009 H'rg Tr., at 9:17-23.

The Court fails to see how the R&R "misstated" what was conceded to by Defendants. The R&R further fleshes out the arguments made at the hearing and on the next page discusses the Defendants' position in regards to exhaustion and the 60 day requirement. Magistrate Judge Wilkerson's findings do not even appear to be based upon the objected to concession. The Court adopts the facts as stated in the Report and Recommendation.

3

II. Defendants' Objection to the Application of "Continuous Violation" to the Grievance Procedure

As discussed in the facts above, the Plaintiff first requested dental care sometime between the end of February and April of 2007. After trying to resolve the dispute over treatment informally, first by requesting a dental assistant, then by requesting to see Dr. Litherland, and then by speaking with the Medical Director, Plaintiff filed his grievance on July 17, 2007 and then completed the administrative appeal process. Defendants do not disagree that the Plaintiff completed the administrative appeal process in a timely manner. Rather, as inmates are required to file a grievance within sixty days after the discovery of an incident (Ill. Admin. Code, tit. 20 §504.810 (2003)), Defendants argue the Plaintiff can only seek redress for injury that may have occurred in the sixty days prior to the filing of the grievance. Plaintiff, on the other hand, argues that deliberate indifference is a continuing violation and therefore, he is not barred from bringing claims outside of the prior sixty days.

A. Legal Standard

A prisoner may not file a § 1983 suit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006). In order to satisfy the exhaustion requirement of 28 U.S.C. § 1997e (a), a prisoner's grievance and appeal must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford*, 548 U.S. at 90, 93 (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits). The Illinois Department of Corrections (IDOC) policy requires grievances to "contain factual details

regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. . . . [or] as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(b) (2003). The Illinois Administrative Code also requires a prisoner to attempt to resolve the matter informally before filing a formal grievance. *Id.*at §504.810(a).

When a grievance, however, is not made up of several separate instances that may need to be grieved separately but rather a continuing harm in the alleged denial of medical care, it is a continuing violation. *See Wilder v. Sutton*, 310 Fed. Appx. 10, *4 (7th Cir. 2009)

> This untimeliness contention is frivolous. Wilder's grievance, whether dated in November or February or March, related to a basic concern-his unanswered requests to worship with Wiccan utensils-and that concern is not a particular "incident" but a continuing wrong…Wilder does not assert that he was prevented from worshiping on a particular day in November 2003; his grievances recount his long-running effort to obtain permission to acquire items he deemed essential to practice his religion. *Id.*

When an action is not about a singular or isolated incident but rather the Plaintiff's "long-running effort" to resolve his medical condition, the Plaintiff is not required to grieve each wrong action. *See also Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001).

The Defendants cite to *Santiago v. C/O Smithson*, as being authoritative on this issue, completely ignoring the words "without ruling on the issue" which appear at the beginning of the footnote cited.[1] 2010 WL 1132564 *3, n1 (S.D. Ill. March 22, 2010). The Seventh Circuit, however, has ruled on this issue and found a grievance must be filed within the requisite time period following the last wrong act when there is a continuous wrong. "An employee need only file an EEOC charge within 300 days of the last hostile act in a continuous and ongoing hostile work environment." *Moore v. Vital Products*, 641 F.3d 253, 256 (7th Cir. 2011). Although it is a

---

[1] Defendants' reliance upon this case and many other unpublished cases in its objection is disingenuous given its vocal opposition to the use of unpublished cases.

Equal Opportunity Commission case, both cases are before administrative agencies, both are governed by statutes which require administrative remedies to be exhausted, and both are interpreting the exhaustion requirement in light of a continuing wrong. *Id*.

This finding is consistent with prior holdings of the Seventh Circuit on the Prisoner Litigation Reform Act and the application of the continuous injury doctrine. Indeed, the Seventh Circuit has held "deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, 258 F. Appx. 3, 5-6 (7th Cir. 2007). The Seventh Circuit has also stated that when an ongoing violation is alleged, a plaintiff may "reach back" to the point where a defendant "learned that [the inmate] had a condition warranting medical attention yet unreasonably refused to provide that attention." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).

B.  Application

In the present situation, the Plaintiff first attempted to resolve his complaint informally, going to Dr. Litherland, Ms. Correll, and then the medical director before filing his grievance at the medical director's behest. The Plaintiff was well within the sixty day requirement following the appointment with Dr. Litherland where he learned there was no possibility his teeth would be repaired without some type of intervention. Under the rule articulated above, the last wrong in these events occurred on June 26, 2007 and the Plaintiff thus had sixty days from this date to file his grievance about the continuing series of events from the end of February to the filing of his grievance. The Plaintiff does not complain multiple singular or isolated incidents but rather his "long-running effort" to resolve his medical condition. *See also Heard*, 253 F.3d 316. As such, the Court adopts the R&R as it applies to the Plaintiff's exhaustion of remedies.

III.     Defendant's Objection to Exhaustion as Applied to Wexford Health Sources

The Defendants' final objection also pertains to the exhaustion of remedies but as applied to Defendant Wexford Health Sources. Defendants object to Magistrate Judge Wilkerson's finding that Plaintiff exhausted his administrative remedies as to Wexford Health Sources (Wexford).

A.  Legal Standard

The legal standard as to exhaustion of remedies is the same as articulated above. Further, after a *de novo* review of the proper standard as applied to Wexford, the Court finds the R&R to be an accurate reflection of the law and will therefore not fully restate it here. In short, the Illinois Administrative Code requires a grievance to contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." Tit. 20 §504.810(b) (2003).  The Code continues to say, however, "this provision does not preclude an offender from filing a grievance when the names of individuals are not known…" *Id*.

The Supreme Court, as discussed in the R&R, has interpreted the PLRA to not require each individual to be named for the exhaustion of remedies to be satisfied as the point of the grievance is not to put a potential defendant on notice of a lawsuit but rather to alert the prison to a problem. *Jones v. Bock*, 543 U.S. 199m 218-19 (2007). Importantly, other federal courts in Illinois have already rejected Defendant Wexford's argument that an inmate must identify Wexford Health Sources by name in a grievance prior to bringing suit against it. *See, e.g., Thomas v. Ghosh*, 2009 WL 910183 at *4 (N.D. Ill. March 31, 2009); *Latkas v. Health Professionals Limited*, 2007 WL 4379417 (C.D. Ill. December 12, 2007).

B.  Application

As stated in the facts both here and in the R&R, the Plaintiff asked repeatedly for the names

7

of the defendants and their identities were withheld from him. He cannot, therefore, be responsible for naming their employer in the grievance. The case cited to by Wexford, *Giampaolo*, is not applicable here. *Giampaolo v. Bartley*, 2010 WL 2574203 (S.D. Ill. June 23, 2010). In *Giampaolo*, the Plaintiff failed to allege any facts with any specificity or name or describe a single defendant. Here, the Plaintiff was thorough in his grievance and put forth all the facts which he knew. He cannot be responsible for information which was kept from him.

Further, the existence of a contract between the Illinois Department of Corrections and Wexford Health Sources in no way limits the rights of the Plaintiff who is not privy to that contract, had no reason to know it existed, and was not furnished it upon request (as admitted by Wexford's attorney at the *Pavey* hearing). The contractual relationship exists only between Wexford and the Illinois Department of Corrections. The Court finds that in exhausting his administrative remedies, the Plaintiff also exhausted his remedies as to Wexford Health Sources.

## CONCLUSION

Accordingly, the Court hereby **ADOPTS** the R & R (Doc.68) **in its entirety** and finds the Plaintiff exhausted his administrative remedies as to all defendants.

**IT IS SO ORDERED.**
**DATED: September 27, 2011.**

                              s./ J. Phil Gilbert
                              **J. PHIL GILBERT**
                              **District Judge**